**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | **NO. 20-272-2** |
| | : | |
| **SHAMIR JOHNSON** | : | |

**MEMORANDUM
with Findings of Facts and Conclusions of Law**

**KEARNEY, J.**                                                                                                                **October 28, 2020**

Our grand jury charged Philadelphian Shamir Johnson with bringing narcotics into the Federal Detention Center while visiting his incarcerated brother on January 31, 2020 just weeks after he completed a term of probation on a Pennsylvania conviction. The Federal Detention Center captured his conduct on tape. When federal agents started looking for him, Mr. Johnson immediately took to social media and, among other things, threatened shooting federal officers. He has a history of fleeing the police including recklessly driving at over 100 miles an hour in residential areas. Upon arrest in September 2020, Judge Wells ordered him detained pending trial. If convicted, Mr. Johnson may face a sentence with a recommended guideline range of six to twelve months. Mr. Johnson now moves for release from pretrial detention arguing confusion in his earlier reporting of a verifiable address in the Philadelphia area may have led to Judge Wells's detention order and there are several conditions of confinement which can ensure his appearance at trial and avoid risk to the community. Following lengthy cogent arguments from Mr. Johnson's counsel and from the United States and considering the nature of Mr. Johnson's offenses and his threats of violence when he feared being arrested, as well as his desire weeks ago to leave our jurisdiction when he knew of this investigation, we deny his motion for release.

**I. Findings of fact**

1. Our grand jury charged Shamir Johnson with providing contraband in prison, 18 U.S.C. § 1791(a)(1)(2), and possessing with intent to distribute Suboxone, 21 U.S.C. § 841(a)(1) and (b)(1)(E) of the Controlled Substances Act.

2. The United States moved for pretrial detention arguing Mr. Johnson poses a flight risk and danger to himself and the community.

3. The United States argued the strength of its case against Mr. Johnson, his criminal history, conduct in the current case, and social media posts mandated pretrial detention.

4. On September 16, 2020, Judge Wells granted the United States' motion after a pretrial detention hearing. Judge Wells found Mr. Johnson posed a flight risk because of his frequent travel and lack of verifiable address. Mr. Johnson's attitude towards dealing drugs and violence towards federal officers reflected in his social media posts also led her to find he would continue trafficking if released, and held his criminal record poses a danger to the community.

5. Mr. Johnson now moves to revoke Judge Wells's pretrial detention order and for release on conditions of bail.

6. Mr. Johnson proposes a $50,000 personal recognizance bail, with the condition he resides with his sister, and a family friend and her daughter in Philadelphia; report to pretrial services; submit to random drug testing; submit to electronic monitoring, with permission and approval by pretrial services to leave his residence for employment, meetings with counsel, and medical appointments; refrain from obtaining a passport and firearms; and restrict travel to the Eastern District of Pennsylvania. He also agrees to not visit or communicate with his brother, the co-defendant in this case.

*Background before Mr. Johnson's charged January 31, 2020 conduct.*

7. Shamir Johnson is a twenty-three-year old with substantial ties to the Philadelphia community where most of his family resides.

8. Mr. Johnson lived with his sister, a family friend and her twelve-year old daughter in Philadelphia. He also frequently spent time at his girlfriend's home, which is also in Philadelphia.

9. He worked at his mother's restaurant as a dishwasher and assistant cook, and as an independent tow truck driver.

10. If released from pretrial detention, Mr. Johnson intends to work at his mother's restaurant as an assistant cook and live with his sister, family friend, and her daughter in Philadelphia. His mother, a Delaware resident, will pick him up and drive him back and forth from work in her restaurant.

11. Mr. Johnson has earlier contacts with the police, including ten arrests, two juvenile adjudications, and one adult conviction for fleeing and eluding police.

12. His adult conviction arises from a November 11, 2017 flight from the police when he ran a stop sign and fled through a residential area and active construction zone, driving over one hundred miles per hour after police attempted to pull him over.

13. After being arrested and charged in state court with fleeing from police, a judge released him on pretrial supervision.

14. On pretrial release, Mr. Johnson failed to timely appear for trial on three separate occasions. A judge issued a bench warrant and at trial found him guilty of fleeing from police and sentenced him to one year of probation.

15. His one year of probation expired weeks before he visited his brother Shaquan Johnson on January 31, 2020 at the Federal Detention Center in Philadelphia.

### *Mr. Johnson's charged January 31, 2020 conduct.*

16. Our grand jury indictment charging Mr. Johnson with distribution of a controlled substance and providing contraband in prison is based on allegations:

    a. On January 31, 2020, Shamir Johnson used a baby to smuggle forty-nine strips of Suboxone and a cell phone into the Federal Detention Center while visiting his brother, Shaquan Johnson;

    b. Mr. Johnson put the contraband in the baby's coat, and then handed the baby to Shaquan Johnson who then removed the contraband from the baby's pocket;

    c. Before the visit, Mr. Johnson signed Federal Bureau of Prisons form A0224, alerting him to all prohibited activities and objects on Bureau grounds, including "Narcotics" and "Telephone";

    d. Video cameras in the Federal Detention Center visiting area recorded the January 31, 2020 incident;

    e. Staff members at the Federal Detention Center searched Shaquan Johnson immediately after the visit, finding the forty-nine Suboxone strips and cell phone; and

    f. Mr. Johnson admitted to smuggling the contraband and later confessed again to an FBI agent.

17. On September 1, 2020, special agents of the Federal Bureau of Investigation attempted to arrest Mr. Johnson at his mother's home in Delaware.

18. The special agents did not find Mr. Johnson at the home, and spoke with his girlfriend, sister, and mother who stated they would contact him and urge him to surrender. They told the special agents Mr. Johnson did not have a permanent residence nor did he reside at the address listed on his license.

19. The next day, September 2, 2020, Mr. Johnson posted on his social media, "Tell the feds to suck a d--k not getting caught, gingerbread bruh on the road smoking hella dope bruh," and the following day, "The feds tryna f--k up my trap from Percolating but mean while I'm outta town recuperating."

20. On September 4, 2020, Mr. Johnson posted, "My favorite gun this glock but ima switch it out next month," and, "Ima keep shooting [u]ntil I heard sirens."

21. Mr. Johnson has also referred to selling drugs and watching after people in the "feds" in his social media posts.

22. The special agents alerted law enforcement Mr. Johnson's social media posts suggested he possessed a firearm and is armed and dangerous and will "shoot until he hears sirens."

23. From September 2 to September 10, 2020, Mr. Johnson traveled between Western Pennsylvania and Philadelphia, and traveled to Florida and Delaware in the weeks before his arrest.

24. On September 10, 2020, special agents arrested Mr. Johnson as he checked out of a hotel near the Philadelphia International Airport with his girlfriend and child. Mr. Johnson's girlfriend told the special agents they intended to leave for South Carolina.[1]

## II. Conclusions of Law

25. As charged by the grand jury, there is probable cause to believe Mr. Johnson provided contraband in prison and possessed with intent to distribute Suboxone.

26. Possession with intent to distribute Suboxone carries a maximum sentence of ten years imprisonment.

27. We apply the rebuttable presumption no condition or combination of conditions will reasonably assure Mr. Johnson's appearance at trial or safety of the community.

28. Mr. Johnson failed to rebut the presumption no condition of release, or combination of conditions, will reasonably assure his appearance as required or safety of the community.

29. The nature and circumstances of the charged offenses prove Mr. Johnson poses a flight risk by a preponderance of the evidence, and a danger to the community by clear and convincing evidence.

30. The weight of the evidence against Mr. Johnson is strong and shows he used a baby to smuggle forty-nine strips of Suboxone and a cell phone into the Federal Detention Center.

31. Mr. Johnson's history and characteristics confirms he poses a flight risk by a preponderance of the evidence, and he poses a danger to the community by clear and convincing evidence.

32. The nature and seriousness of the danger to the community posed by Mr. Johnson confirms he poses a flight risk by a preponderance of the evidence, and he poses a danger to the community by clear and convincing evidence.

33. The United States proved by a preponderance of the evidence no condition or combination of conditions will reasonably assure Mr. Johnson's appearance at trial.

34. The United States proved by clear and convincing evidence no condition or combination of conditions will reasonably assure the safety of the community if Mr. Johnson is released.

### III.  Analysis

Congress, through the Bail Reform Act, addresses "the deep public concern . . . about the growing problem of crimes committed by persons on release" and recognizes "there is a small but identifiable group of particularly dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the

safety of the community." [2] Congress provides "[i]f, after a hearing . . . the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community, such judicial officer shall order the detention of the person before trial."[3] There is a rebuttable presumption no condition or combination of conditions will reasonably assure a person's appearance or safety of the community "if the judicial officer finds there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act."[4] An indictment establishes probable cause and shifts the burden on the defendant to produce evidence that he is neither a risk of flight nor danger to the community.[5]

There is probable cause, supported by an indictment and facts proffered by the United States, to find Mr. Johnson violated 18 U.S.C. § 1791(a)(1)(2) by providing contraband in prison, and 21 U.S.C. § 841(a)(1) and (b)(1)(E) of the Controlled Substances Act by possessing with intent to distribute Suboxone. Mr. Johnson concedes the rebuttable presumption applies because possession with intent to distribute Suboxone carries a maximum sentence of ten years imprisonment. But Mr. Johnson argues the Sentencing Guidelines recommend a range of imprisonment of six to twelve months and this relatively lower recommended range offers little incentive to flee. The presumption applies regardless of the maximum term he would face under the Guidelines because he is charged with one of the offenses listed under section 3142(e) carrying a maximum prison term of ten years.[6] To rebut the presumption, Mr. Johnson must produce some credible evidence to rebut the presumption for pretrial detention.[7] If he rebuts the presumption with credible evidence, the burden of persuasion shifts to the United States.[8]

To order pretrial detention, we "must find by a preponderance of evidence that no conditions can reasonably assure the defendant's appearance as required or by clear and

convincing evidence that no combination of conditions will reasonable assure the safety of the community."[9] We consider factors set by Congress in section 3142(g), including the nature and circumstances of the offense; the weight of the evidence against the person; the history and characteristics of the person; and, the nature and seriousness of the danger to any person or the community.[10] We review the facts and make this determination independently, giving the reasons articulated by Judge Wells's respectful consideration.[11]

Mr. Johnson offers no credible evidence to rebut the presumption no condition or combination of conditions will assure his appearance or the safety of the community. Even if he rebutted the presumption, we find Mr. Johnson poses a danger to the community by clear and convincing evidence and a risk of flight by the preponderance of the evidence.

### *The nature and circumstances of the offense.*

The nature and circumstances of the offense weigh in favor of pretrial detention. Mr. Johnson is charged with smuggling forty-nine strips of Suboxone and a cellphone into the Federal Detention Center after signing a form before his visit alerting him to the prohibition of narcotics and telephones on Bureau grounds. He placed the contraband in a baby's coat and handed the baby to his brother, Shaquan Johnson, who then removed the contraband from the baby's pocket. Although the Sentencing Guidelines recommend a range starting at six months' imprisonment for the offense, the circumstances confirm Mr. Johnson's apparent disrespect for the Law. We cannot find conditions of bail would reasonably assure the safety of the community given the dangerous nature of drug trafficking, especially in a prison, and Mr. Johnson's conduct demonstrating his propensity to develop schemes to evade the Law.[12]

Mr. Johnson argues the potential penalties for the offenses are relatively minor which negates an incentive to flee. The length of the sentence for the offense is one consideration in

8

assessing risk of flight; however, Mr. Johnson's conduct leading up to his arrest, including a plan to leave for South Carolina, provide evidence he poses a flight risk.

### *The weight of the evidence against Mr. Johnson.*

There is substantial evidence against Mr. Johnson: s staff at the Federal Detention Center witnessed Mr. Johnson passing a baby to his brother to smuggle contraband into the prison; viideo cameras at the Federal Detention Center reportedly recorded the crime; and immediately after the visit, Federal Detention Center officers searched Shaquan Johnson and found forty-nine Suboxone strips and a cellphone. Mr. Johnson admitted to staff members he smuggled the contraband into the Federal Detention Center, and later confessed to the crime to a special agent. Mr. Johnson failed to rebut the United States' evidence.

### *Mr. Johnson's history and characteristics.*

Mr. Johnson has significant ties to the Philadelphia community where most of his family resides. He lives with his sister, family friend, and her twelve-year old daughter. He had a job as dishwasher and assistant cook for his mother's restaurant and as an independent tow truck driver. Mr. Johnson could resume working at his mother's restaurant.

At twenty-three years old, Mr. Johnson has a history of numerous contacts with police. Before his January 31, 2020 offense, he had ten arrests, two juvenile adjudications including one for possession of a firearm, and an adult conviction for fleeing and eluding police. His adult conviction arises from driving through a stop sign and fleeing through a residential area and active construction zone, driving over one hundred miles per hour after officers attempted to pull him over. Granted pretrial release, Mr. Johnson failed to timely appear for the call of the trial in state court on these charges on three separate occasions.

Mr. Johnson exhibits a pattern of disregard for the Law and there is no adduced evidence of a change in outlook. He failed to adduce evidence showing his "moral integrity, respect for the law, or personal reliability," to rebut the presumption of no conditions of bail reasonably assuring his appearance at trial and safety of the community."[13] Although he asserts his ties to the community will give reasonable assurance he will appear at trial, Congress decided community or family ties do not, and should not, weigh heavily in the risk of flight analysis.[14] Special agents arrested Mr. Johnson as he checked out of a hotel near the Philadelphia International Airport. His girlfriend told FBI special agents they were leaving for South Carolina after telling them days before she would urge Mr. Johnson to surrender. Although Mr. Johnson argues he was not going to South Carolina to evade arrest, these actions, along with his conviction for fleeing and eluding arrest and failing to appear for trial, lead us to find no condition of release will reasonably assure his appearance as required.

### *The nature and seriousness of the danger to any person or the community posed by Mr. Johnson.*

Mr. Johnson poses a danger to the community if released. His significant contacts with police, including this charged offense, and social media posts referring to selling drugs, owning a gun, and shooting until he "heard sirens" demonstrates he is dangerous. Mr. Johnson argues he has no convictions for crimes of violence and the various social media posts were "nothing more than bragging and/or mimicking the lyrics to rap songs."[15] Crimes involving violence are not the only crimes we consider dangerous. In determining danger to the community, we consider "the likelihood that defendant will, if released, commit one of the proscribed federal offenses [with which the defendant is charged]."[16] Safety under the Act "includes a reasonable assurance that drug dealing will not continue."[17]

Mr. Johnson's conduct offers credence to our concern he will continue to traffic drugs if released. He argues his ties to Philadelphia and proposed conditions of release, including living with his sister and working at his mother's restaurant, will reasonably assure he cease drug trafficking. We disagree. He engaged in this alleged conduct while in the same persons' proximity.

In *United States v. Vargas*, Judge Shapiro denied defendant's pretrial release, noting his employment during the day did not preclude his ability to continue distributing cocaine.[18] Judge Shapiro also considered home confinement on electronic monitoring and concluded it would not prevent future drug offenses because drugs can and are sold from homes.[19] In *United States v. Merlino*, Judge Hutton found "house arrest provides no guarantee that Defendant will refrain from engaging in criminal activity. . . . under house arrest, defendant could engage in criminal conduct in a variety of ways, including communicating with visitors to his home and conducting criminal activity over cell phones."[20] Mr. Johnson worked at his mother's restaurant during the time he committed the charged offense. Although he denied her involvement, his sister joined him at the Federal Detention Center where he committed the offense. If he concealed his drug trafficking from her once, we have no reason to believe he will not do it again while living with her, a family friend, and her twelve-year old daughter.

Mr. Johnson's social media posts also raise concerns. He asserts they are merely bragging and mimicking lyrics to rap songs. At the detention hearing, Mr. Johnson's experienced counsel argued social media posts are "a matter of free speech." This is true. Mr. Johnson is free to express himself on social media, and we are free to consider the nature of his free speech in deciding whether pretrial detention is appropriate.[21]

Mr. Johnson's posts from the time of his attempted arrest on September 1, 2020 to the time of his actual arrest on September 10, 2020 are problematic. After his family members told the FBI

11

they would urge Mr. Johnson to surrender, he posted on his social media account on September 2, 2020: "Tell the feds to suck a d--k not getting caught, gingerbread bruh on the road smoking hella dope bruh."[22] At the detention hearing, the United States argued the reference to "gingerbread" refers to a nursery rhyme which states, "Run, run, run as fast as you can. You can't catch me. I'm the Gingerbread Man."[23] Mr. Johnson did not challenge this reading. The following day, Mr. Johnson posted: "The feds tryna f--k up my trap from Percolating but mean while I'm outta town recuperating."[24] Mr. Johnson also makes references to owning a gun, selling drugs, watching after people in the "feds," and shooting until he "heard sirens."[25] Because his social media posts suggested he possessed a firearm and would shoot until sirens were heard, special agents alerted law enforcement Mr. Johnson may be armed and dangerous and used additional resources for his arrest. Given the context, Mr. Johnson's social media posts demonstrate he knew of an imminent arrest and planned to leave Philadelphia to evade arrest. The posts also reflect Mr. Johnson's attitude towards the Law and danger to the community.

## IV.  Conclusion

Mr. Johnson failed to rebut the presumption of pretrial detention for those charged with an identified offense under the Bail Reform Act. Applying the factors set by Congress, we find no condition or combinations of conditions will reasonably assure Mr. Johnson's appearance at trial or safety of the community if released. We find Mr. Johnson poses a flight risk by a preponderance of the evidence, and a danger to the community by clear and convincing evidence.  We deny Mr. Johnson's Motion to revoke pretrial detention.

---

[1] Mr. Johnson claims he did not intend to leave for South Carolina until a birthday trip around September 24, 2020. The special agents confirmed his girlfriend said they intended to leave the

day of the arrest. In any event, he made plans to go to South Carolina (on whatever date) knowing special agents were looking for him.

[2] 18 U.S.C. § 3142; S.Rep. No. 98-225, at 6-7 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3189.

[3] 18 U.S.C. § 3142(e)(3).

[4] 18 U.S.C. § 3142.

[5] *United States v. Woods*, No. 16-218-01, 2016 WL 6398568, at *1 (E.D. Pa. Oct. 28, 2016) (citing *United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986)); *United States v. Carbone*, 793 F.2d 115, 119 (3d Cir. 1986).

[6] *United States v. Cirillo*, No. 99-1514, 1999 WL 1456536, at *2 (3d Cir. July 13, 1999).

[7] *United States v. Baez*, No. 16-522, 2017 WL 528316, at *2 (E.D. Pa. Feb. 9, 2017) *(citing Gibson*, 481 F. Supp. 2d at 422 (W.D. Pa. 2007)); *see also Carbone*, 793 F.2d at 560 (3d Cir. 1986).

[8] *United States v. Perry*, 788 F.2d at 100, 106 (3d Cir. 1986). The presumption of dangerousness or flight remains a factor to be considered even after it is rebutted by the defendant. *Carbone*, 793 F.2d at 560-61.

[9] *Baez*, 2017 WL 528316, at *2; *see, e.g.*, *Perry*, 788 F.2d at 106; *United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986).

[10] 18 U.S.C. § 3142(g). The considerations of the history and characteristics of the person include, "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law." *Id.*

[11] *Suppa*, 799 F.2d at 120 (3d Cir. 1986) (quoting *United States v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985)).

[12] *United States v. Vargas*, No. 90-240-01, 1990 WL 92532, at *2 (E.D. Pa. June 19, 1990) (noting drug trafficking poses a "grave threat to society.").

[13] *United States v. Sterling*, 459 F. Supp. 3d 673 (E.D. Pa. 2020) (quoting *United States v. Santiago-Pagan*, No. 08-424-1, 2009 WL 1106814, at *5 (M.D. Pa. Apr. 23, 2009)).

[14] *United States v. Merlino*, No. 99-363, 1999 WL 557943, at *3 (E.D. Pa. July 30, 1999); *See* Sen. Comm. on Judiciary, Comprehensive Crime Control Act of 1983, S.Rep. No. 98-225, at 24-25 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3207-08.

[15] ECF Doc No. 16 at 5.

---

[16] *Carbone*, 793 F.2d at 561-62 (quoting *Perry*, 788 F.2d at 111).

[17] *Id.* (citing *United States v. Strong*, 775 F.2d 504, 506 (3d Cir. 1985)); *see also United States v. Pitts*, No. 09-204, 2010 WL 3303800, at *4 (W.D. Pa. Aug. 19, 2010) ("Safety of the community is implicated not only by violence, but also by narcotics trafficking.").

[18] *United States v. Vargas*, No. 90-240-01, 1990 WL 92532, at *2 (E.D. Pa. June 19, 1990).

[19] *Id.*

[20] *Merlino*, 1999 WL 1198415, at *4.

[21] "The Bail Reform Act states that the rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at a detention hearing." *Delker*, 757 F.2d at 1396 (quoting 18 U.S.C. § 3142(f)(2)(B)).

[22] ECF Doc No. 6-1.

[23] Pretrial Detention Hr'g Tr. 21, September 15, 2020.

[24] ECF Doc No. 6-1 at 3.

[25] ECF Doc No. 6-1.